**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**CHRISTOPHER HOWARD and**
**JEFFREY GREENSTONE, on behalf of**
**themselves and all others similarly**
**situated**

      **Plaintiffs,**

**v.**                                                          **Case No: 5:15-cv-200-Oc-PRL**

**SECOND CHANCE JAI ALAI LLC**

      **Defendant.**

---

**ORDER**

Pursuant to prior notice, a hearing was held in this case on January 28, 2016.  The undersigned heard argument of counsel regarding several pending matters, including Plaintiffs' Amended Notice and Motion for Requested Fees and Expenses (Doc. 38), Plaintiffs' motion for sanctions (Doc. 41), and Defendant's Motion for Protective Order (Doc. 43).

    **I.**      **Background**

Plaintiffs worked as poker dealers for Defendant at its Ocala Poker & Jai-Alai establishment.  Plaintiffs bring this case pursuant to the Fair Labor Standards Act (FLSA), and allege that Defendant created an invalid tip pool by sharing Plaintiffs' tips with ineligible employees.   Plaintiffs allege that they were required to participate in a tip pool with various other employees such as managers, vault personnel, floor personnel, and cashiers over at least the past 3 years.   As a result of an ongoing discovery dispute between the parties, the undersigned conducted a hearing to address pending matters.

## II.       Plaintiffs' Amended Notice and Motion for Requested Fees and Expenses

The first issue to be addressed is Plaintiffs' Amended Notice of requested fees and expenses (Doc. 38).   This request arises from the Court's prior order granting Plaintiffs' motion to compel (Doc. 34), and subsequent order denying Defendant's motion to reconsider that Order (Doc. 39).   The parties' initial discovery dispute centered on Defendant's failure to respond to interrogatories.   Previously, the Court granted the motion to compel in favor of Plaintiffs, and Plaintiffs' were directed to submit their reasonable attorney's costs and fees pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure.

Plaintiffs claim 15.7 hours of attorney time x $350 per hour for a total of $5,495.00. Defendant objects (Doc. 40) and argues that the rate should be $300 per hour, and the amount of time claimed for preparing the motion to compel is excessive.

Upon consideration, while a rate of $350 per hour is not necessarily excessive, the undersigned finds that a rate of $300 per hour is more reasonable for this stage in the proceedings. Further, the Court agrees with Defendant's argument that some of the time claimed by Plaintiffs was not incurred in making the motion to compel, but would have been incurred anyway.   For example, Plaintiffs claim a total of 1.1 hours for reviewing and analyzing discovery responses, time which would have been incurred regardless of the motion to compel.   The remaining time claimed was spent on counsel's conference with opposing counsel, preparation of the motion, review of the order on the motion, preparation of time records, and review and response to Defendant's motion for reconsideration.   Notably, Defendant's motion for reconsideration was effectively a belated response to Plaintiffs' motion to compel, and the Court finds that Plaintiffs' time spent responding was also a reasonable expense incurred in making the motion to compel.

According, the Court finds that Plaintiffs reasonably incurred 14.6 hours of attorney time in making the motion, and are therefore entitled to attorney's fees in the amount of $4380.00 ($300 per hour x 14.6 hours).

### III.    Plaintiffs' Motion For Sanctions

 Plaintiffs have moved for sanctions (Doc. 41), arguing that Defendant still has not complied sufficiently with discovery requests.   Plaintiffs argue that, based on Defendants responses to interrogatories, it is impossible to tell which employees held positions such as chip runner, teller, cashier, and or podium person, and those distinctions are significant to the issues on the case regarding tip pool eligibility.   Plaintiffs seek further clarification regarding employees categorized as "Cage" personnel.   Plaintiffs also contend that Defendant will not state which employees were considered "Vault Personnel."

The dispute centers on the following interrogatory and response:

> Interrogatory Number 2 asked "For each employee identified in Interrogatory No. 1, state the position(s) worked by each such employee and their job duties."

> Response:
> See attached Exhibit 1. A "Dealer" Simply means a poker dealer. An employee categorized as "BAR" would be cocktail waitresses and bartenders. Their job duties are as their name implies. An employee categorized as "DELI" would be cooks/cashiers that work in the deli that provides food service to customers. Their job duties are as their name implies. An employee categorized as "CAGE" would be chip runners, cashiers/tellers, and podium persons. Cashiers/tellers sell chips and cash out chips to customers. They also sell poker tournament seats/tickets and cash out winnings for the tournaments. Chip runners sell chips on the floor to poker players and cash out winnings for the tournaments. Chip runners sell chips on the floor to poker players and collect seat cards. Podium persons seat players, sell chips and take out seat reservations. They also track "high hands" for jackpots that are periodically paid out.

Defendant responds that it has already fully and completely responded to all discovery, but that Plaintiffs remain dissatisfied because the answers do not comport with Plaintiffs' narrative of the case.   Defendant maintains that the roles of "chip runners, cashier, etc." are not distinct positions, but duties that "Cage" employees would be requested to perform, and that it has responded to the interrogatories to the best of its ability given the way Defendant categorizes employees.   Defendant further argues that it made available 23 banker's boxes of documents in December, and gave Plaintiffs' counsel an opportunity to inspect them.   Defendant has also provided accounting information on a flashdrive, and, as a courtesy, provided an employee to explain payroll information to Plaintiffs.

Upon consideration, the Court finds that Plaintiffs' motion for sanctions (Doc. 41) is due to be denied.   As discussed at the hearing, however, Defendant will be directed to make available for inspection all personnel records for the 31 employees identified as "Cage" employees, to the extent such records exist.

### IV.      Defendant's Motion for Protective Order

Finally, the Court heard argument regarding Defendant's Motion for Protective Order. (Doc. 43).   Counsel for Plaintiffs explained the need to interview current and former employees of Defendant in order to ascertain who many have information relevant to Plaintiffs' claims. Plaintiffs maintain that it would be cost prohibitive to depose all 159 identified employees, and that the ethical rules permit such communications.   Defendant has requested a protective order, and urges the Court to impose restrictions such as those set forth in *NAACP v. Florida Dept. of Corrections*, 122 F. Supp. 2d 135 (M.D. Fla. 2000).   Plaintiffs argue that such restrictions are unnecessary and that counsel has already agreed not to interview any current managerial employees.

The Court is mindful of the relative value of Plaintiffs' claims in this case, and it is understandable that taking 159 depositions (or even 31) would be cost prohibitive.   Although Plaintiffs do not specify their claimed FLSA damages in the Answers to Court Interrogatories (Docs. 12 & 13), their claims are likely to be modest.   The Court agrees that nothing in the ethical rules, including Rule 4-4.2 of the Florida Rules of Professional Conduct, prevents Plaintiffs' counsel from conducting *ex parte*, informal interviews of current rank-and-file employees whose statements may not constitute an admission on the part of the organization.   Likewise, nothing prohibits Plaintiffs' counsel from contacting and interviewing witnesses who are former employees of Defendant without prior notification to and consent from Defendant's counsel.   This is true regardless of whether they are former managers if they have not maintained ties with the corporation and have not sought or consented to representation by the corporations' attorneys. *See Stone v. Geico General Ins. Co.*, Case No. 8:05-cv-636-T-30TBM, November 7, 2005; *H.B.A. Management, Inc. v. Estate of May Schwartz*, 693 So. 2d 541 (Fla. 1997) (construing rule 4-4.2 to concern only current employees and agents whose actions may impute liability to the corporation or whose statements may constitute admissions of the corporation).

Counsel for Defendant represented that the 31 Cage employees of interest to Plaintiffs are non-managerial and that they are generally former employees.   In an abundance of caution, during the interview process, counsel for Plaintiffs shall inquire as to whether the interviewee is represented by counsel, is a current or former employee, and whether the employee identifies himself or herself as a managerial employee.   In the event that any interviewee identifies as being represented by counsel, or if a current employee identifies himself or herself as managerial, counsel for Plaintiffs must immediately terminate the interview and notify counsel for Defendant accordingly.

Defendant's motion for protective order will be granted to the limited extent that Plaintiffs' counsel is prohibited from communications with current managerial employees of Defendant, as would be prohibited by Rule 4-4.2 in any event.   Otherwise, Defendant's motion is due to be denied.   In conducting any interviews, Plaintiffs' counsel is reminded that he must comply with all applicable ethical rules, including Rule 4-4.2 of the Florida Rules of Professional Conduct, and that any information obtained in the employee interviews <u>may</u> <u>not</u> be used to bind Defendant or as an admission by a party-opponent under Rule 801 of the Federal Rules of Evidence.

## V.      Conclusion

For the reasons stated above, it is ordered that:

(1) Plaintiffs' Motion for Fees and Expenses (Doc. 38) is **GRANTED** pursuant to Rule 37(a)(5)(A), and Defendant shall pay Plaintiffs' reasonable expenses and attorney's fees in the amount of $4,380.00.

(2) Plaintiff's Motion for Sanctions (Doc. 41) is **DENIED**.   As agreed at the hearing, however, on or before February 8, 2016, Defendant shall make available to Plaintiffs for inspection all personnel records of the 31 "Cage" employees.

(3) Defendant's Motion for Protective Order (Doc. 43) is **GRANTED** in part and **DENIED** in part, as set forth in this Order.

(4) If the parties desire to schedule a settlement conference before a United States Magistrate Judge, they may file an appropriate motion or contact the Courtroom Deputy.

**DONE** and **ORDERED** in Ocala, Florida on January 28, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties