## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**CHRISTOPHER HOWARD and
JEFFREY GREENSTONE, on behalf of
themselves and all others similarly
situated**

      **Plaintiffs,**

**v.**                                                    **Case No: 5:15-cv-200-Oc-PRL**

**SECOND CHANCE JAI ALAI LLC, a
Florida for profit limited liability
company d/b/a Ocala Poker & Jai-Alai,
Fictitiously,**

      **Defendant.**

_____

### ORDER

This FLSA consent case is before the Court on cross-motions for summary judgment, with supporting exhibits. (Docs. 51 & 64). Defendant has also filed a reply. (Doc. 73). Thus, the motions are fully briefed and ripe for review. Because there are issues of material fact that preclude summary judgment, however, the parties' motions (Docs. 51 & 64) are due to be **DENIED**.

### I. BACKGROUND

Plaintiffs, Christopher Howard and Jeffrey Greenstone, are former employees of Defendant, Second Chance Jai-Alai, LLC ("Second Chance"), and were employed as poker dealers at Defendant's Ocala Poker and Jai-Alai establishment. As set forth in their Second Amended Complaint (Doc. 29), Plaintiffs bring claims for alleged violations of the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA").

The instant dispute arises from Second Chance's claiming of a tip credit on its poker dealers, which permitted it to pay them less than the statutorily required minimum wage. Plaintiffs allege that Defendant's failure to comply with the FLSA 'tip credit' requirements results in Defendant's inability to claim a 'tip credit' for Plaintiffs.   Plaintiffs also allege that, by requiring its poker dealers to share their tip pool with non-tipped employees, Second Chance was not permitted to claim the tip credit and was therefore obligated to pay its dealers the full minimum wage.   In a single count against Defendant Second Chance, Plaintiffs seek unpaid minimum wages owed to them for the period in which they were paid pursuant to the tip credit, in addition to liquidated damages, and attorneys' fees and costs.   Although the Second Amended Complaint (Doc. 29) also contains a parallel Count II against corporate owner and officer Joseph James Coffey, he was dropped as a party pursuant to Fed. R. Civ. P. 21.   (Doc. 33).

Both parties have filed motions for summary judgment focused on the validity of the tip credit and tip pool.   Plaintiffs argue that Defendant was ineligible for the tip credit for three different reasons:   (1) because Defendant failed to provide proper notice of the tip credit to Plaintiffs; (2) because Defendant improperly included so-called "Vault employees" who do not customarily receive tips in the tip pool; and (3) because Defendant included an employee with supervisory authority in the tip pool.   In response, Defendant contends that Plaintiffs' allegations are without merit and fail to create any dispute of material fact.   The parties both point to record evidence, including depositions and affidavits, supporting their opposing positions.   Upon a review of the record, it is apparent that genuine disputes regarding material facts preclude the entry of summary judgment in favor of either party.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party.   *See Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).   As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.   If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."   *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).   The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## III. DISCUSSION

Under the FLSA, an employer must pay its employee a minimum wage.   *See* 29 U.S.C. §206(a).   That wage may include the employee's tips. 29 U.S.C. §203(m).   That is, an employer may pay an employee a cash wage below the minimum wage so long as the employer supplements the difference with the employee's tips; this is known as an employer taking a "tip credit."   *See id*.

In order to use a tip credit toward a tipped employee's minimum wage, an employer must satisfy two conditions: (1) the employee must be informed by the employer of the FLSA's tip provisions; and (2) the employee must be allowed to retain all tips which he/she receives, except

in instances where pooling of tips is employed among other employees who "customarily and regularly receive tips." 29 U.S.C. § 203(m). *See also Kubiak v. S.W. Cowboy, Inc.*, 3:12-CV-1306-J-34JRK, 2016 WL 659305, at *6 (M.D. Fla. Feb. 18, 2016) (citing *Rubio v. Fuji Sushi & Teppani, Inc.*, No. 6:11-CV-1753-ORL-37, 2013 WL 230216, at *2 (M.D. Fla. Jan. 22, 2013)).

Here, the parties do not dispute that Plaintiffs are tipped employees. The dispute focuses on whether Plaintiffs were properly informed of the tip credit provisions, and whether Defendants included in the tip pool employees who were not customarily and regularly tipped – i.e., vault personnel and an alleged supervisory employee.

### A.  Notice Requirements of the Tip Credit

There are specific requirements for employers to be eligible for the tip credit.[1] An employer must inform the tipped employee of the specific provisions of 29 U.S.C. § 203(m). 29 C.F.R. § 531.59(b). The employer bears the burden of proving that they are eligible for a tip credit, including that sufficient notice was provided. *Vancamper v. Rental World, Inc.*, No. 6:10-CV-209-ORL-19, 2011 WL 1230805, at *5–6 (M.D. Fla. Mar. 31, 2011). The requirements of a tip credit are strictly construed. *Rubio*, 2013 WL 230216, at *2 (citing *Garcia v. La Revise Assocs. LLC*, No. 08–cv–9356, 2011 WL 135009, at *5–6 (S.D.N.Y. Jan.13, 2011)). If an employer fails to meet the requirements of section 203(m), the employer may not claim the "tip credit" and is liable for full minimum wage, regardless of actual economic harm suffered by the employee. *See Kubiak*, 2016 WL 659305, at *6; *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d

---

[1] As a preliminary matter, it is important to note the distinction between "tip credit" and "tip pool." While the two terms are interrelated, they have separate and distinct meaning and requirements. An employer takes a "tip credit" when the employer pays an employee a cash wage less than the minimum wage required, but supplements the difference with the employee's tips. *See*, 2016 WL 659305 at *6. In contrast, a "tip pool" is "[w]here employees practice tip splitting, as where waiters give a portion of their tips to the busboys." 29 C.F.R. § 531.54.

793, 800 (N.D. Ill. 2013); *Nat'l Rest. Ass'n v. Solis*, 870 F. Supp. 2d 42, 45 (D.D.C. 2012).

Here, the parties dispute whether sufficient notice was given to Plaintiffs regarding the details of the tip credit, and the parties' disagreement focuses upon the significance of an amendment to the applicable regulation.   Plaintiffs assert that Defendant failed to comply with the notice requirements of amended rule 29 C.F.R. § 531.59(b).   Meanwhile, Defendant concedes that the new rule is in effect, but contends it complied with the requirement as defined by case law.

### 1.   The Amendment to Rule 29 C.F.R. § 531.59(b)

Effective May 5, 2011, the Department of Labor ("DOL") amended rule 29 C.F.R. § 531.59(b), detailing an employer's obligation to inform tipped employees of the tip credit provisions of § 203(m).   The requirement "to inform" was enacted in 1974, when Congress amended the FLSA to include, *inter alia*, that a tip credit shall not apply "unless such employee has been informed by the employer of the provisions of this subsection." 29 U.S.C. § 203(m). However, as observed by the DOL in the introductory summary of the final rule, courts have been inconsistent in determining what level of notice is sufficient to adequately inform the employee of the provisions of § 203(m).[2]   *See Updating Regulations Issued Under the Fair Labor Standards*

---

[2] *Compare Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 298 (6th Cir. 1998) (holding that an employer must "inform its employees of its intent to take a tip credit toward the employer's minimum wage obligation," but was not required to 'explain' the tip credit) *with Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1322 (1st Cir. 1992) (interpreting section 203(m)'s notice provision to require, "at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations," but that the provision "could easily be read to require more"); *Also see Reich v. Chez Robert, Inc.*, 821 F. Supp. 967, 977 (D. N.J. 1993) (holding that an employer does not meet its obligation to "inform" under section 3(m) when it tells its tipped employees that they will be paid a specific wage but does not explain that that wage is below the minimum wage and that it is permitted by law based on the employees' tips), *rev'd on other grounds*, 28 F.3d 401 (3d Cir. 1994));   *Compare Pellon v. Business Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1310-11 (S.D. Fla. 2007), *aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008) (holding that the employer fulfilled its duty to 'inform its tipped employees of the provisions of section 3(m) by posting the FLSA poster and verbally notifying the employees that they would be paid $2.13 an hour plus tips, further noting that "a prominently displayed poster containing all of the relevant tip credit information" would also constitute sufficient notice) *with Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98 (E.D. Tenn. 1979) (holding that vague references to the minimum wage and

*Act*, 76 Fed. Reg. 18832-01, 18843-44.   This inconsistency prompted revisions.   The DOL's

purpose in promulgating the revisions was to update FLSA regulations that had "become out of

date because of subsequent legislation or court decisions," and to "conform the regulations to the

FLSA Amendments."   *See Updating Regulations Issued Under the Fair Labor Standards Act*, 73

Fed. Reg. at 43654 (July 28, 2008).   The DOL decided, after careful reexamination of the terms

of the statute, its legislative history, and a review of the public comments, to revise the rule as to

"the level of interpretation that employers must provide when informing tipped employees about

the tip credit pursuant to section [20]3(m)."   *Updating Regulations Issued Under the Fair Labor

Standards Act*, 76 Fed. Reg. at 18844.

The amended final rule, codified as 29 C.F.R. § 531.59(b) provides five distinct disclosure

requirements, and reads in part:

> Pursuant to <u>section 3(m)</u>, an employer is not eligible to take the tip credit unless it
> has informed its tipped employees in advance of the employer's use of the tip
> credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash
> wage that is to be paid to the tipped employee by the employer; [2] the additional
> amount by which the wages of the tipped employee are increased on account of
> the tip credit claimed by the employer, [3] which amount may not exceed the value
> of the tips actually received by the employee; [4] that all tips received by the tipped
> employee must be retained by the employee except for a valid tip pooling
> arrangement limited to employees who customarily and regularly receive tips; [5]
> and that the tip credit shall not apply to any employee who has not been informed
> of these requirements in this section.

*Id.*

Courts have addressed whether the amended rule exceeds what the applicable statute

requires.   *See Nat'l Rest. Ass'n v. Solis*, 870 F. Supp. 2d 42 (D.D.C. 2012).   As the *Solis* court

noted, "the final [amended] rule is more specific than the proposed rule in the sense that it requires

employers to make five specific disclosures, which were not itemized in the proposed rule."   870

---

a poster that was not prominently displayed did not meet the requirement to 'inform').

F. Supp. at 53 (analyzing the final amended rule and its relation to the proposed rule and 29 U.S.C. § 203(m)).   However, the specific disclosures required by the final amended rule come directly from the text of the statutory provisions of section 203(m), which is apparent in a side-by-side comparison of the text.   *See id.*

In finalizing the amendment, the DOL expressly declined to follow certain case law, noting that "those courts generally failed to consider the important legislative developments underlying the FLSA's tip credit provisions."   *Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed. Reg. at 18844.   Specifically, the DOL pointed to a Senate Report that accompanied the 1974 Amendments, which provided that:

> [T]he amendment "modifies Section 3(m) of the [FLSA] by requiring employer explanation to employees of the tip credit provisions, and by requiring that all tips received be paid out to tipped employees. . . . The tip credit provision [] is designed to insure employer responsibility for proper computation of the tip allowance and to make clear that the employer is responsible for informing the tipped employee of how such employee's wage is calculated. Thus, the bill specifically requires that the employer must explain the provision of the Act to the employee and that all tips received by such employee must be retained by the employee.

*Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed. Reg. at 18843 (quoting S. Rep. No. 93-690 at 42-43 (1974)).   And as one commentator pointed out, "the plain language of the statute, [] requires not just that the employer 'inform' the employee that it is taking the tip credit, but that 'the employer [inform the employee] of the provisions of this subsection.'"   *Id.* Thus, expressly requiring the disclosure of five specific provisions, as in the final amended rule, does not require employers to do any more than what they were already obligated to do under section 203(m), albeit a more detailed requirement than some courts previously mandated.   *See Nat'l Rest. Ass'n*, 870 F. Supp. at 56; *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681 (D. Md. 2012).   It could be said that the final amended rule was intended to clarify the notice requirements.

### 2. *Evidence of Notice to Plaintiffs*

In Defendant's Motion for Summary Judgment, Defendant asserts that it fulfilled the obligation to provide adequate notice by prominently displaying an employment poster approved by the DOL. (Doc. 51, p. 14). However, as to what constitutes adequate notice, Defendant relies on *Pellon* and *Vancamper*, which, as Plaintiffs correctly note, were both decided prior to the effective date of the final amended rule 29 C.F.R. 531.59(b). In fact, in considering such a poster <u>after</u> the final amended rule had taken effect, one court held that the poster itself was insufficient:

> "The text of [FLSA] posters alone cannot comply with the requirement to inform employees of the provisions of § 203(m). The federal poster discloses that an employer *may* claim a tip credit when 'certain other conditions [are] met' without describing those other conditions. . . . One of such conditions not described is the requirement of § 203(m) that the employee retain all tips except for tip pooling."

*AppleIllinois*, 917 F. Supp. 2d at 802-03.

In deciding the cross-motions for summary judgment, however, it is not necessary to determine the precise contours of the post amendment notice requirement. There is ample evidence in the record, including the Ocala Poker Dealer Handbook and deposition testimony, which creates an issue of fact regarding the extent of notice provided to Plaintiffs.

First, it is indeed undisputed that an employment poster approved by the Department of Labor was displayed in the Defendant's facility. (Affidavit of Brian Matthews, Doc. 70, ¶ 29). The poster displayed in this case stated the following:

> Employers of "tipped employees" must pay "a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference. Certain other conditions must also be met.

(Doc. 70-3, p. 4). The poster, however, did not contain any mention of the final disclosure requirement under 29 U.S.C. § 531.59(b): that "all tips received by the tipped employee must be

retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips."   In light of the amended regulation, it is questionable whether the poster the Defendant had posted, lacking any information about tip pooling, would – without more – constitute sufficient notice, where Defendant claimed a tip credit and Plaintiffs were part of a tip pool.   *See AppleIllinois*, 917 F. Supp. 2d at 802-03.

Further, the evidence regarding what notice was given to Plaintiffs – in addition to the poster – is vague and inconclusive.   Defendant cites the deposition of Plaintiff Jeffrey Greenstone admitting that at least certain aspects of the tip credit were explained to him.   (Deposition of Jeffrey Greenstone, Doc. 80, p. 24-25).   Plaintiff Howard also testified that managers such as Brian Matthews explained how the tip share would work.   (Deposition of Christopher Howard, Doc. 79, p. 58-59).   While *Pellon* recognized that a poster and oral notification could be sufficient notice (*see Pellon,* 528 F. Supp. 2d at 1310-11), here it is unclear what details were explained to Plaintiffs, and whether those oral notices would have met the conditions of the regulation.   And, while the Ocala Poker Employee Handbook contains a general discussion regarding how tips are shared under a formula determined by the Poker Room Manager, it lacks details.   (See Handbook, Doc. 80, Ex. 1).

All of this evidence creates an issue of fact regarding whether Defendant complied with the notice requirements of section 203(m).   As to Defendant's motion for summary judgment on this issue, Second Chance has not established the non-existence of a triable fact, particularly in light of the revised regulation.   Likewise, neither have Plaintiffs established the non-existence of a triable fact as to the same issue, because their own deposition testimony could suggest they received comprehensive explanations regarding the tip credit.   Thus, summary judgment is not appropriate in favor of either party on the issue of notice of the tip credit provisions.

## B.  Validity of the Tip Pool Due to Alleged Ineligible Participants

Even if notice were proper, material issues of fact exist as to whether the tip pool was proper.  Specifically, Plaintiffs contend that they were required to participate in a tip pool with employees who did not "customarily and regularly receive tips," as set forth in 29 U.S.C. § 203(t).  If tipped employees are required to participate in a tip pool with any employee who does not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a "tip credit."  *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 300 (6th Cir. 1998); *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3rd Cir. 1994).   Invalidity of the tip pool would entitle the employee to payment of minimum wage for all hours the employee had worked where the tip-pool was used.  *Id*.  "The requirements of the tip credit are strictly construed even if . . . [plaintiffs] actually earned more than minimum wage for every shift they worked. . . ."  *Rubio v. Fuji Sushi & Teppani, Inc.*, No. 6:11-cv-1753-Orl-37TBS, 2013 WL 230216, at *2 (M.D.Fla. January 22, 2013)(quoting *Garcia v. La Revise Assocs. LLC*, No. 08-cv-9356, 2011 WL 135009, at *5-6 (S.D.N.Y. Jan. 13, 2011)).

The FLSA defines a customarily and regularly tipped employee as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  29 U.S.C. 203(t).[3]   In determining whether an employee is a customarily tipped employee, courts have focused on the extent of the employee's *customer interaction*.  *See Rubio* 2013 WL 230216, at *2;  *Wacjman v. Investment Corp. of Palm Beach,* No. 07-80912-CIV, 2008 WL 783741, at *3 (S.D.Fla. March 20, 2008)(courts focus on whether the employee "performs important customer

---

[3]  Under 29 CFR 531.54, an employee who receives tips from a tip-pool is permitted to count those received tips to establish whether they exceed $30 per month. However, courts have rejected the argument that an employee could become eligible for tip sharing simply by taking money from the tip pool.  *See Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048 (GEL), 2006 WL 851749, at *14 & n.22 (S.D.N.Y. March 30, 2006).

service functions, i.e., does the employee have more than *de minimis* service interaction with customers").

Here, Plaintiffs contend the tip pool is invalid due to the participation of vault employees who lack customer interaction, and the participation of Kathleen Danielson who Plaintiff argues is a supervisory employee not otherwise permitted to participate in the tip pool.   Upon a review of the record, the undersigned finds that there are genuine issues of material fact as to whether these employees are customarily tipped employees.

### 1.  General Overview of Second Chance's Operations

As explained by Defendant's President and manager of day-to-day operations, Brian Mattthews, Defendant's establishment includes a poker room, bar, deli, jai-alai exhibit court, inter-track wagering and other activities.   (Affidavit of Brian Matthews, Doc. 70, ¶ 4).   In addition to the poker floor, there is a "Cage" separated by walls and glass windows.   *Id.* at ¶ 8.   Cage department employees are stationed at the windows where patrons are able to exchange cash and poker chips.   *Id.* at ¶ 8.   The Cage area is further separated into four additional areas, including the "vault," "Vicky's Office," "the Counting Room, and the "Man Trap."   *Id.* at ¶ 10.   Matthews explained, "[t]he Vault is where Ocala Poker's employees maintain most of the money it collects from patrons in the Poker Room.   Since the Vault is where large amounts of money are kept, only experienced and trusted Cage employees perform the Vault Counting function."   *Id.* at ¶ 10.

### 2.  Cage & Vault Employees

According to Vicki Pernek, Cage department manager, some of the more experienced and trusted Cage department employees also work in the Vault.   (Affidavit of Vicki Pernek, Doc. 69, ¶ 7).   Pernek explained that while Cage department employees are working in the Vault, they are also performing teller duties while other Cage employees are on break, and they also continue to

perform duties such as chip running and podium duty during every shift they work. *Id.* at ¶ 7. Pernek contends that Cage employees "interact with and are all tipped by customers for their work." *Id.* at ¶ 6.

Defendant has argued vehemently in this litigation that the Cage department does not include discrete and separate positions. As Defendant's argument follows, because Cage department employees perform duties such as chip running, podium duty and teller duty, they are properly tippable employees.

Plaintiffs contend, however, that numerous facts suggest that at least some Vault employees lack the necessary amount of customer interaction to qualify as tipped employees under 29 U.S.C. § 203(t). Plaintiffs note that that the Vault is separate from both the Cage and public areas, and is closed off by walls and doors. Further, Plaintiffs have identified at least one employee, Jason Bendure, who primarily describes his position as a "Vault person." (Deposition of Jason Bendure, Doc. 74, p. 9). Bendure distinguished his position from tellers because he worked in the Vault. *Id.* at p. 36. Similarly, Bendure described another employee, Kathleen Danielson, as working primarily in the Vault. *Id.* at p. 23. Regarding Danielson, Bendure testified, "[s]he was trained to work in the cage and on the poker room floor, but she was usually in the vault." *Id.* at 16.

The Court is mindful of Defendant's position that Plaintiffs are merely attempting to create a false personnel distinction that is contrary to the way it employees its Cage department staff. Yet, although the record supports a finding that Cage employees interact with customers under many circumstances (such as while performing teller duty and chip running duties), there is conflicting evidence in the record on at least two points. First, there is conflicting evidence as to whether certain Cage employees, such as Bendure and Danielson, are primarily Vault employees

spending the majority of time in non-public areas with little or limited customer interaction – and thus are not properly tipped employees.   Indeed, courts have held that employees who do not have customer interaction and perform work entirely outside of the view of customers cannot be validly categorized as tipped employees under § 203(m).   *See Myers v. The Copper Cellar, Co*., 192 F.3d 546, 550 (6th Cir. 1999). ("Because the salad preparers abstained from any direct intercourse with diners, worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as food preparation or kitchen support work, they could not be validly categorized as 'tipped employees' under section 203(m).").   To be sure, in this case, the parties disagree regarding whether "Vault employee" is a distinct position or simply a duty performed by Cage employees, and the record evidence illustrates that dispute as outlined above.

Likewise, there is also inconclusive evidence regarding the amount of time certain employees, including specific "Vault' employees such as Danielson and Bendure, spend interacting with customers.   Because a disputed issue of material fact exists regarding the quantity and quality of the interactions between so-called "Vault" employees and customers, the undersigned cannot resolve whether Vault employees (considered by Defendant to be Cage employees and included in the tip pool) are indeed customarily and regularly tipped employees. Put another way, regardless of the nomenclature of the positions, Plaintiffs have identified evidence that creates material issues of fact regarding whether employees such as Danielson and Bendure were improperly included in the tip pool.

### 3.  Kathleen Danielson

Plaintiffs also argue that the tip pool was invalid because it included a supervisory employee, Kathleen Danielson.   Meanwhile, Defendant contends that there is no evidence to support that Danielson was an "employer" under the meaning of the FLSA.

The forced sharing of tips with management is an illegal practice that would invalidate the tip pool, regardless of whether the members of management are engaged in services that could be the subject of tipping.   *See Wacjman v. Investment Corp. of Palm Beach,* No. 07-80912-CIV, 2008 WL 783741, at *3 & n.1 (S.D.Fla. March 20, 2008).   The theory is that employees who exercise substantial managerial authority over the day to day operations are functionally the "employers." Section 203(d) defines an "employer," as "any person acting directly or indirectly in the interest of an employer in relations to an employee. . . ."   29 U.S.C §203(d).   In determining who is an "employer," courts have looked at the following factors:   the control of hiring and firing of employees; control of the manner in which work is performed; and the fixing of employee wages. *See Dole v. Continental Cuisine, Inc.,* 751 F.Supp. 799, 802-03 (E.D.Ark. Sept. 28, 1990).

Typically, employees who have been deemed to be "employers" under the FLSA are owners or managers.   *See, e.g., Gionfriddo v. Jason Link, LLC*, 769 F. Supp. 2d 880, 893-894 (D. Md. 2011) (holding that the owner of a tavern was an "employer" under the FLSA and thus ineligible to participate in a tip pool).   *See also Ayres v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 308–09 (S.D.N.Y.1998) (holding that a restaurant employee serving as the manager was precluded from receiving tips).

Here, Plaintiffs argue that the tip pool is invalid due to the amount of supervisory authority exercised by one if its participants, Kathleen Danielson.   In Jason Bendure's deposition, he

described Danielson as "Vickie's assistant," apparently referencing Vicki Pernek, Cage department manager.  (Deposition of Jason Bendure, Doc. 74, p. 15).  According to Bendure, Danielson's tasks included helping make employee schedules, balancing the vault value, and training employees, including chip runners, tellers, and podium people.  *Id.* at 42.

Defendant contends that there is no evidence to support that Danielson had the authority to qualify as an "employer" under the FLSA.  Defendant argues that, although Danielson occasionally assisted with scheduling, Pernek made the final decision for the week based on Danielson's suggestion, and that Danielson was not among the employees who had any managerial or supervisory authority.  (Supplemental Affidavit of Brian Matthews, Doc. 73-2., ¶ 2).

Upon review of the record, the Court notes that the evidence regarding Danielson's duties is sparse and not well developed.   When viewed in the light most favorable to Plaintiffs, however, and in context with the other record evidence, the fact that Danielson was known as the assistant of the Cage department manager raises an issue regarding the extent of Danielson's authority.   At least one fair interpretation of the evidence is that Danielson was the "Assistant" Cage department manager.   Indeed, in her affidavit, Pernek explains that she (Pernek) was removed from the tip pool due to concerns that her supervisory duties would trigger an invalidity of the pool.   (Affidavit of Vicki Pernek, Doc. 69, ¶ 9).   A reasonable fact finder could conclude that, because Pernek had sufficient authority to raise concerns about effectively being an "employer," her assistant performed similar duties and possessed similar supervisory authority.

Where issues of fact exist regarding the extent of an employee's control over hiring, firing, training and scheduling, courts have declined to grant summary judgment in FLSA cases.  *See Schear v. Food Scope America, Inc*, 297 F.R.D. 114, 135 (S.D.N.Y. 2014) (where managing employees made decisions about scheduling other employees, including assigning work shifts,

court found plaintiffs provided sufficient evidence to withstand summary judgment on the issue of whether employees were "employers" under the FLSA,).   Here, given the facts regarding Danielson's responsibility for scheduling and performing other supervisory duties, Defendant has not met its burden of establishing the non-existence of a triable issue of fact as to Danielson's status.

## IV.   CONCLUSION

Because disputed issues of fact exist as to whether Plaintiffs received adequate notice of the tip credit under 29 U.S.C. § 203(m), whether certain Cage or Vault employees are "tipped employees" within the meaning of the FLSA, and whether Kathleen Danielson possessed sufficient supervisory authority to be deemed an "employer," the question of the validity of Defendant's tip pool cannot be resolved as a matter of law.   Accordingly, the parties' cross-motions for summary judgment (Docs. 51 & 64) are **DENIED.**

**DONE** and **ORDERED** in Ocala, Florida on June 16, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

- 16 -