UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Ocala Division

CHRISTOPHER HOWARD and
JEFFREY GREENSTONE, on behalf of
Themselves and other similarly situated,

          Plaintiffs,

vs.                              Case No:  5:15-cv-200-oc-39PRL

SECOND CHANCE JAI-ALAI, LLC, a Florida
for profit limited liability company, d/b/a Ocala
Poker & Jai-Alai, Fictitiously

          Defendants.

_____/

## DEFENDANT, SECOND CHANCE JAI-ALAI, LLC'S' MOTION FOR PARTIAL RECONSIDERATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant SECOND CHANCE JAI-ALAI, LLC, hereby files this Motion For Partial Reconsideration of this Court's Order of Motion for Summary Judgment (Document 81) and states:

1.      On May 4, 2015, Plaintiffs sued, under the Fair Labor Standards Act ("FLSA"), both Defendant and Joseph Coffey, alleging that both employed Plaintiffs as poker dealers at Ocala Poker and Jai-Alai. Plaintiffs further alleged Defendant and Mr. Coffey wrongfully claimed a tip-credit by failing to properly notify Plaintiffs about the tip credit under 29 U.S.C. § 203(m) ("Section 3(m)"). Mr. Coffey has since been dismissed as a defendant.

2.      After discovery concluded, on April 6, 2016, Defendant filed its Dispositive Motion for Final Summary Judgment (Document 51). Defendant argued, in part, that its notice to Plaintiffs was adequate under well-established law in the Eleventh Circuit. Specifically,

Defendant relied on *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1310-11 (S.D. Fla. 2007) *aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008) to argue that a prominently displayed poster containing language approved by the Department of Labor ("DOL") would sufficiently inform an employee of the FLSA tip credit. *See* Doc. 51, pp. 13-14.

       3.      On April 9, 2016, Plaintiffs filed their Response to Motion for Summary Judgment and Cross Motion for Partial Summary Judgment (Document 64). In their response and motion, Plaintiffs argued that *Pellon* "is inapplicable case law" because "that case was [decided] 4 years prior to the effective date of 29 CFR 531.59 [76 FR 18856 Apr. 5, 2011.]" *See* Doc. 64, p. 9. This regulation, which purportedly tracks the language of Section 3(m), provides five discrete requirements which an employer must inform an employee of for an employer to validly claim a tip credit.[1] In addition, Plaintiffs provided a single district court case from another jurisdiction to argue that 29 C.F.R. § 531.59 invalidated *Pellon* in the Eleventh Circuit. *See* Doc. 64, p. 9; *and Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 682 (D. Md. 2012).

       4.      On April 22, 2016, Defendant filed its Response to Cross Motion for Partial Summary Judgment (Document 73). Defendant argued, in part, that Plaintiffs' reliance on *Dorsey* was unjustified because at least two other district cases from this Circuit, after the effective date of 29 C.F.R. § 531.59, continued to rely on *Pellon* to evaluate notice under Section 3(m). *See* Doc. 73, pp. 5-6; *Ide v. Neighborhood Rest. Partners, LLC*, 32 F. Supp. 3d 1285, 1292-93 (N.D. Ga. 2014); *and Garcia v. Koning Rests. Int'l*, No. 12-CV-23629-HUCK, 2013 WL 8150984 (S.D. Fla. May 10, 2013).

---

[1] Defendant maintains that the DOL's interpretation of 29 U.S.C. § 203(m) in 29 C.F.R. § 531.59 imposes greater duties to "inform" than the unambiguous language of the statute provides. Accordingly, 29 C.F.R. § 531.59 violates both steps of *Chevron v. Natural Res. Def. Council*, 467 U.S. 837 (1984) and is not entitled to deference on those grounds. To the extent that *Nat'l Rest. Ass'n v. Solis*, 870 F. Supp. 2d 42 (D.D.C. 2012) suggests a different result, Defendant maintains *Solis* is wrongly decided and unpersuasive. However, out of respect for this Court's prior Order and the absence of any intervening law or fact on this issue, Defendant's argument relating to a proper application of *Chevron* is inappropriate at this time.

5.    Defendant also sought to highlight the inconsistency between 29 C.F.R. § 531.59

and the DOL's continuous use of WHD Publication 1088. Specifically, Defendant noted that the

DOL's own website continues to provide WHD Publication 1088 as an "approved copy" of a

minimum wage poster to "explain[] the Act[.]" *See* Doc. 73, p. Exh. A. WHD Publication 1088

explains the provisions of Section 3(m) as follows:

> Employers of "tipped employees" must pay a cash wage of at least
> $2.13 per hour if they claim a tip credit against their minimum wage
> obligation. If an employee's tips combined with the employer's cash
> wage of at least $2.13 per hour do not equal the minimum hourly
> wage, the employer must make up the difference. Certain other
> conditions must also be met.

6.    On June 16, 2016, this Court issued its Order denying both the Defendant's and

the Plaintiffs' motions. This Court relied heavily on another case from another district, *Driver v.*

*AppleIllinois, LLC*, 917 F. Supp. 2d 793 (N.D. Ill. 2013) to decide that the DOL poster that

Defendant displayed in its establishment was inadequate to describe the provisions of Section

3(m). Specifically, the Court noted that "in considering such a poster <u>after</u> the final amended rule

had taken into effect" (emphasis in original) the Court cited with approval:

> The text of FLSA posters alone cannot comply with the requirement
> to inform employees of the provision of § 203(m). The federal poster
> discloses that an employer *may* claim a tip credit when "certain other
> conditions [are] met" without describing those conditions…. One of
> such conditions not described is the requirement of § 203(m) that
> the employee retain all tips except for tip pooling.

*See* Order, Doc. 81, p. 8 (quoting *AppleIllinois*, 917 F. Supp. 2d at 802-03) (alteration in

original).   Therefore, this Court concluded that the FLSA poster "did not contain any mention of

the final disclosure requirement under 29 U.S.C. § 531.59(b)[2] [sic] that: 'all tips received by the

---

[2] It appears this Court is referring to the regulation 29 C.F.R. § 531.59(b).

tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.'" *See* Doc. 81, p. 8-9.

7.      In addition, this Court relied on the DOL's *Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed. Reg. 18832 *et seq.* to support its finding that 29 C.F.R. § 531.59 invalidated *Pellon*. Specifically, the Court found that the DOL revised its regulations to "conform the regulations to the FLSA Amendments" and 29 C.F.R. § 531.59 was purportedly promulgated "after careful reexamination of the terms of the statute, its legislative history, and a review of the public comments[.]" *See* Doc. 81, p. 6.

8.      Shortly after this Court's order, on June 20, 2016, the Supreme Court of the United States, in a determinative 6-2 decision, issued its holding in *Encino Motorcars, LLC, v. Navarro*, No. 15-415, 2016 WL 3369424 (June 20, 2016). In its decision, the Supreme Court described the appropriate deference to be given to agency interpretations of a statute when the agency itself has previously held inconsistent positions. The Supreme Court invalidated the DOL's statutory interpretation in another section of the same final rule. Central to its holding, the Supreme Court criticized the insufficiency of the justifications provided by the DOL in *Updating Regulations Issued Under the Fair Labor Standards Act*, 76 Fed. Reg. 18837-38.[3]

9.      The Supreme Court's decision in *Navarro* will substantially change this Court's evaluation of the notice issue. Accordingly this issue is ripe for reconsideration due to an intervening change of law.

---

[3] Plaintiffs' cursory summary of *Navarro* in its Response to Motion for Continuance of Trial, Document 83, fails to acknowledge that the DOL "formal regulation" was promulgated by the same final rule which promulgated the current version of 29 C.F.R. § 531.59(b).

## MEMORANDUM OF LAW AND ANALYSIS

### I. Reconsideration of a prior order is appropriate when there is an intervening change of controlling law.

Fed. R. Civ. P. 56(g) provides that: "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact - including an item of damages or other relief - that is not genuinely in dispute and treating the fact as established in the case."

Fed R. Civ. P. 54(b) provides that:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

This Court has broad discretion to reevaluate issues already heard before it. *See Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994) ("The district courts are necessarily afforded substantial discretion in ruling on motions for reconsideration"). In *Lamar Adver. of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480 (M.D. Fla. 1999), this Court further explained that: "[t]his Court has recognized three (3) grounds justifying reconsideration of an order: (1) an intervening change of controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice[.]" *Id.* at 489 (citing *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. at 694).

### II. *Navarro* establishes that agency interpretations of a statute are not entitled to *Chevron* deference when an agency takes inconsistent positions without proper analysis.

Implicit in this Court's Order is its deference to the DOL's evaluation of Section 3(m) to disregard the contrary statutory interpretation by *Pellon* and other Eleventh Circuit precedent. When evaluating the proper deference to give to an agency interpretation of a statute, *Chevron* states:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 842-43. *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005) further held that "only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction."[4]

While this Court implicitly deferred to the DOL's position on the notice requirements of Section 3(m) it did so without the benefit of *Navarro*, which was decided four days after this Court's Order. In *Navarro*, five automobile "service advisors" sued their prior employer claiming that the employer failed to pay overtime as required by the FLSA. *See Navarro*, 2016 WL 3369424 at *3. The trial court dismissed the employees' action since "service advisors" were exempt as a "salesman, partsman, and mechanic" under 29 U.S.C. § 213(b)(10)(A). *See id.* The plaintiffs argued on appeal that "service advisors" were not exempt under 29 U.S.C. § 213(b)(10)(A) because the DOL ruled in 76 Fed. Reg. 18859 that service advisors were not included in this exemption. *Id.* at *6. The Ninth Circuit reversed the trial court and held that, due

---

[4] As stated in note 1 *supra*, Defendant maintains that precedent within the Circuit establishes that Section 3(m) is unambiguous therefore foreclosing any subsequent statutory interpretation under *Brand X*. However, this argument is not appropriate on a motion for reconsideration nor needed in light of *Navarro*.

to the ambiguity of the original statute, the DOL was entitled to *Chevron* deference on the proper

statutory interpretation of 29 U.S.C. § 213(b)(10)(A). *Id.*

> In evaluating the Ninth Circuit's decision, the Supreme Court explained:

>> One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions. The agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." ... That requirement is satisfied when the agency's explanation is clear enough that its "path may reasonably be discerned." ... But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law....

>> Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change....When an agency changes its existing position, it "need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." .... But the agency must at least "display awareness that it is changing position" and "show that there are good reasons for the new policy." ... In explaining its changed position, an agency must also be cognizant that longstanding policies may have "engendered serious reliance interests that must be taken into account." ... "In such cases it is not that further justification is demanded by the mere fact of policy change; but that a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." ... It follows that an "[u]nexplained inconsistency" in agency policy is "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." ... An arbitrary and capricious regulation of this sort is itself unlawful and receives no *Chevron* deference.

*Id.* at *7 (citations omitted).

The Supreme Court noted that the DOL had taken contrary positions on the application of

the 29 U.S.C. § 213(b)(10)(A) exemption. *Id.* at *4-5. Specifically, in 1970 the DOL had

conclusively provided by regulation that service advisors were not properly included in 29

U.S.C. § 213(b)(10)(A). *Id.* at *4. In response to contrary interpretations by courts and

subsequent legislative revision, however, the DOL issued an opinion letter in 1978 that provided

that service advisors could be exempt from 29 U.S.C. § 213(b)(10)(A). *Id.* In 1987, the DOL

confirmed this position in its Field Operations Handbook. *Id.* In 2008, the DOL finally sought to

revise its regulations to bring this position in accordance with current regulations, and proposed

revisions to that effect. *Id.* at *5. In 2011, however, the DOL decided to not go through with the

proposed 2008 revisions, and instead decided to revert to the DOL's prior 1970 position that

service advisors were not exempt from overtime under 29 U.S.C. § 213(b)(10)(A).

After evaluating 76 Fed. Reg. 18837-38 ("Section 7(A)") the Supreme Court determined

that the DOL, in passing the new regulation, failed to adequately explain its departure from its

prior position. *Id.* at *8. Despite the DOL's statement it "carefully considered all the comments,

analyses, and arguments made for and against the proposed changes," the Court observed that:

> [W]hen it came to explaining the 'good reasons for the new policy,'
> … the Department said almost nothing. It stated only that it would
> not treat service advisors as exempt because 'the statute does not
> include such positions and the Department recognizes that there are
> circumstances under which the requirements for the exemption
> would not be met."
>
> Although an agency may justify its policy choice by explaining why
> that policy "is more consistent with statutory language" than
> alternative policies, … *the Department did not analyze or explain*
> *why the statute should be interpreted to exempt dealership*
> *employees who sell vehicles but not dealership employees who sell*
> *services* (that is, service advisors). And though several public
> comments supported the Department's reading of the statute, the
> Department did not explain what (if anything) it found persuasive in
> those comments beyond the few statements above.

*Id.* at *9 (emphasis added).

The Supreme Court also stressed that the industry's reliance on the DOL's prior position

required more than a bare assertion for such a significant change in policy. *Id.* at *8. Specifically

the Court noted:

> The retail automobile and truck dealership industry had relied since 1978 on the Department's position that service advisors are exempt from the FLSA's overtime pay requirements.... Dealerships and service advisors negotiated and structured their compensation plans against this background understanding. Requiring dealerships to adapt to the Department's new position could necessitate systemic, significant changes to the dealerships' compensation arrangements.... *Dealerships whose service advisors are not compensated in accordance with the Department's new views could also face substantial FLSA liability* ... even if this risk of liability may be diminished in some cases by the existence of a separate FLSA exemption for certain employees paid on a commission basis, see § 207(i), and even if a dealership could defend against retroactive liability by showing it relied in good faith on the prior agency position, see § 259(a). In light of this background, the Department needed a more reasoned explanation for its decision to depart from its existing enforcement policy.

*Id.* (emphasis added).

Coincidentally, the Plaintiffs now rely on this Court's deference to the DOL's analysis in 76 Fed. Reg. 18842-44 ("Section 7(B)(ii)") to establish a new standard for notice under Section 3(m). However, the DOL's analysis in Section 7(B)(ii) is as defective as the analysis in Section 7(A), and is therefore arbitrary and capricious under *Navarro*.

### III. Section 7(B)(ii) contradicts its prior position on notice under Section 3(m).

In its prior Response to Cross Motion for Partial Summary Judgment (Document 73), Defendant identified the inconsistency between the DOL's summary of Section 3(m) in Section 7(B)(ii) of its regulations and its continuous use of Publication 1088. Notably, the DOL has used prior versions of Publication 1088 since at least 1996, as indicated by screenshots of the DOL's Employee Standards Administration Website, which are attached as **Exhibit A**.[5] The

---

[5] According to archive.org's "wayback machine" service, this poster was provided by the DOL on July 26, 2002 on its website. *See* search results for "http://www.dol.gov/esa/whd/flsa/", https://web.archive.org/web/20020101000000*/http://www.dol.gov/esa/whd/flsa/ (last visited June 29, 2016); *see also* Your Rights Under the Fair Labor Standards Act Federal Minimum Wage Poster, https://web.archive.org/web/20020804185810/http://www.dol.gov/esa/whd/flsa/, https://web.archive.org/web/20020811043310/http://www.dol.gov/esa/regs/compliance/posters/flsa.htm, and

descriptions of the tip credit are the same as the current poster. *Compare* **Exhibit A** *with* Ex. A of Doc. 73. It is difficult to conceive of anything more the DOL could do to induce reliance on an "inadequate" interpretation of Section 3(m) than draft a poster with language purportedly describing the "provisions" of Section 3(m). Notably, this inequity influenced the Southern District's decision in *Pellon*.[6]

The DOL itself knew of the reliance placed on Publication 1088, as evidenced by an opinion letter it issued in 1997. *See* Dep't of Labor Wage & Hour Div., FLSA Op. Letter, 1997 WL 958300 (Jan. 21 1997)("Opinion Letter"). Although the Opinion Letter did not go as far as *Pellon* by stating that a prominently displayed FLSA poster would, alone, be sufficient notice,[7] the Opinion Letter provided for a far less comprehensive recitation of the "specific requirements" of the tip credit. The Opinion Letter simply provided that, besides an FLSA poster, a "combination of verbal notification [of the tip pool arrangement], written notification in the employment handbook, and notification by paycheck stub would be sufficient to meet the notice requirement in Section 3(m)." *See* Opinion Letter. There is no mention of a duty to state that "all tips received by the tipped employee must be retained by the employee except for a

---

https://web.archive.org/web/20021130015859/http://www.dol.gov/esa/regs/compliance/posters/pdf/minwageP.pdf (last visited June 29, 2016).

[6] *See Pellon*, 528 F. Supp. 2d at 1310, wherein, the court stated:

> Department of Labor regulations explicitly require employers to post "a notice explaining the [FLSA minimum wage provisions]." 29 C.F.R. § 516.4. Because it would defy logic to require the display of inadequate information regarding the minimum wage and employer tip credit, a prominently displayed poster using language approved by the Department of Labor to explain 29 U.S.C. § 203(m) is sufficient notice.

[7] To the extent that *Pellon* and the Opinion Letter provide different standards for appropriate notice, the Opinion Letter is not entitled to any deference, under *Skidmore v. Swift*, 323 U.S. 134. *See Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1238-39 (11th Cir. 2002) (finding that "conclusory" letters that lack explanation fail to receive *Skidmore* deference (citing *Kilgore*, 160 F.3d at 302-03)) *and Porter v. W. Side Rest. LLC*, No. 13-1112-JAR-KGG, 2014 WL 1642152 (D. Kan. Apr. 24, 2014)(finding opinion letter unpersuasive in light of other cases that hold that a FLSA alone is sufficient notice as long as it is prominently displayed). Regardless, the Defendant has clearly brought sufficient summary judgment evidence to comply with the DOL's lenient standard in its prior Opinion Letter.

valid tip pooling agreement limited to employees who customarily and regularly receive tips" as described by this Court. *See* Doc. 81, p. 8-9 (quoting 29 C.F.R. § 531.59(b)). Instead, the Opinion Letter appears similar to the analysis adopted by the Sixth Circuit in *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294 (6th Cir. 1998) which, as noted by this Court, the DOL disapproved of in Section 7(B)(ii). *Compare* Opinion Letter *supra with Kilgore*, 160 F.3d at 298 ("An employer must inform its employees of its intent to take a tip credit [but] as to how the employer may deliver that information, we conclude that an employer must provide notice to the employees, but need not necessarily 'explain' the tip credit"); *see also* Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA),

https://web.archive.org/web/20020813200828/http://www.dol.gov/esa/regs/compliance/whd/whd fs15.htm (last visited June 30, 2016) (which appears to have been offered by the DOL on or before August 13, 2002) a printout of which is attached **Exhibit B**.

Due to this history, the DOL seeking to adopt the language in *Kilgore* in its 2008 proposed rules was a logical outgrowth of its prior position. *See* 73 F.R. 43659 (2008) (citing to *Kilgore*, 160 F.3d at 298). It was surprising, however, that the DOL ultimately decided to depart from its prior position and departed from established case law when promulgating 29 C.F.R. § 531.59(b), and requiring that employers now explain additional "provisions" of Section 3(m).

**IV. *Navarro* compels this Court to not defer to the DOL's revised 2011 position.**

When comparing Section 7(B)(ii) to the bare justification denounced by the Supreme Court in *Navarro*, it is clear the DOL's passage of Section 7(B)(ii) is similarly arbitrary and capricious.[8] Similar to how the DOL failed to acknowledge the significance that the automobile

---

[8] To the extent *Solis* found otherwise, *Solis* did not focus on the history of the DOL's own contrary positions, but instead focused on the plaintiffs' argument that the regulation was "arbitrary and capricious because it is contrary to prevailing federal court decisions." *See Solis*, 870 F. Supp. 2d at 58-59. Specifically, *Solis* found that "plaintiffs have failed to point to any authority that would suggest that a federal agency is bound to promulgate rules that are

industry placed on the DOL's prior position, the DOL failed to explain sufficient reasons for departing from its prior notice requirements in recognition of the reliance placed on its prior positions. And while the DOL *recognized* an inconsistency in Section 7(A), the DOL *did not, in Section 7(B)(ii), even recognize any inconsistency with prior positions on Section 3(m).* Specifically, other than a bare assertion that Publication 1088 "provides only a limited description of the tip credit rules" the DOL failed to justify what purpose would be served by creating new "specific requirements" beyond those contained in Publication 1088.[9] The DOL failed entirely to cite or discuss its prior Opinion Letter which provided a far less "specific" notice standard and deference to Publication 1088's tip credit summary. Most egregiously, the DOL failed to ameliorate its continued inconsistency by failing to instruct the DOL's Wage and Hour division to further revise Publication 1088 to conform with 29 C.F.R. § 531.59(b). It is inconceivable that the DOL would now expect liability to be imposed on an employer for failing to advise employees of a specific requirement which it did not previously consider important as reflected by Publication 1088. Even more worrisome than the inconsistency in Section 7(A), the DOL *continues to maintain this inconsistency* by maintaining Publication 1088 in the same form as before 29 C.F.R. § 531.59(b).

Because of the Supreme Court's decision in *Navarro*, the Plaintiffs' argument this Court should rely on the DOL's evaluation of Section 3(m) is no longer viable. Because the DOL's interpretation of Section 3(m) in its 2011 final rule is not entitled to deference, the Eleventh Circuit's precedent in *Pellon* remains valid and is the proper authority to interpret the duty to inform under Section 3(m). By applying *Pellon* rather than the "arbitrary and capricious" DOL

_____

consistent *with decisions issued by particular federal appellate courts." See id.* at 59 (emphasis added). However, *Solis* was decided without the benefit of *Navarro*.

[9] The DOL also failed to explain why Publication 1088 contained an "insufficient" explanation to begin with.

interpretation in Section 7(B)(ii), Defendant has provided sufficient undisputed facts to prove that it is entitled to judgment as a matter of law, and is therefore entitled to partial summary judgment on the adequacy of the notice given to Plaintiffs.

WHEREFORE, Defendant requests this Court grant Defendant's request to partially reconsider its prior Order of Motion for Summary Judgment (Document 81), and grant partial summary judgment for Defendants that Plaintiffs were given adequate notice as required by Section 3(m).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following: Michael O. Massey, Esquire, massey@352law.com, this 30th day of June, 2016.

GILLIGAN, GOODING & FRANJOLA, P.A.

BY: *s/ Patrick G. Gilligan*
    Patrick G. Gilligan
    Florida Bar No. 375454
    1531 S.E. 36th Avenue
    Ocala, Florida 34471
    (352) 867-7707 Phone
    (352) 867-0237 Facsimile
    Attorneys for Defendants
    Second Chance Jai Alai, LLC, d/b/a
    Ocala Poker & Jai Alai, and Joseph
    Coffey, individually
Primary:   pgilligan@ocalalaw.com
Secondary: canderson@ocalalaw.com
          kpeterson@ocalalaw.com

E:\01. PGG\SECOND CHANCE- HOWARD\Motions orders\Motion for Partial Reconsideration on Defendant's Motion for Summary Judgment 06.30.16.docx

13

## Your Rights Under the Fair Labor Standards Act

# Federal Minimum Wage

# $4.75 *per hour*
### beginning October 1, 1996

# $5.15 *per hour*
### beginning September 1, 1997

Employees under 20 years of age may be paid $4.25 per hour during their first 90 consecutive calendar days of employment with an employer.

Certain full-time students, student learners, apprentices, and workers with disabilities may be paid less than the minimum wage under special certificates issued by the Department of Labor.

<u>Tip Credit</u> – Employers of "tipped employees" must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference. Certain other conditions must also be met.

## Overtime Pay

At least $1\frac{1}{2}$ times your regular rate of pay for all hours worked over 40 in a workweek.

## Child Labor

An employee must be at least **16** years old to work in most non-farm jobs and at least **18** to work in non-farm jobs declared hazardous by the Secretary of Labor. Youths **14** and **15** years old may work outside school hours in various non-manufacturing, non-mining, non-hazardous jobs under the following conditions:

No more than –
  • 3 hours on a school day or 18 hours in a school week;
  • 8 hours on a non-school day or 40 hours in a non-school week.

Also, work may not begin before **7 a.m.** or end after **7 p.m.**, except from **June 1** through **Labor Day**, when evening hours are extended to **9 p.m.** Different rules apply in agricultural employment.

## Enforcement

The Department of Labor may recover back wages either administratively or through court action, for the employees that have been underpaid in violation of the law. Violations may result in civil or criminal action.

Fines of up to $10,000 per violation may be assessed against employers who violate the child labor provisions of the law and up to $1,000 per violation against employers who willfully or repeatedly violate the minimum wage or overtime pay provisions. This law <u>prohibits</u> discriminating against or discharging workers who file a complaint or participate in any proceedings under the Act.

**Note:** • Certain occupations and establishments are exempt from the minimum wage and/or overtime pay provisions.
  • Special provisions apply to workers in American Samoa.
  • Where state law requires a higher minimum wage, the higher standard applies.

**For Additional Information, Contact** the Wage and Hour Division office nearest you – listed in your telephone directory under United States Government, Labor Department.

This poster may be viewed on the world wide web at this address: http://www.dol.gov/dol/esa/public/minwage/main.htm

## The law requires employers to display this poster where employees can readily see it.

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210



WH Publication
Revised October

**EXHIBIT**

" A "



**INTERNET ARCHIVE**
**WayBackMachine**
http://www.dol.gov/esa/regs/compliance/posters/flsa.htm    Go

237 captures
11 Aug 02 - 17 Apr 16

JUL   A
◀   1
2001   2



# U.S. Department of Labor

**Employment Standards Administration Wage and Hour Division**

## *www.dol.gov/esa/whd*

_____Search / A-Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

**August 11, 2002**     DOL > ESA > WHD > WH 1088 FLSA Minimum Wage Poster

# Fair Labor Standards Act (FLSA) Minimum Wage Poster

Every employer of employees subject to the Fair Labor Standards Act's minimum wage provisions must post, and keep posted, a notice explaining the Act in a conspicuous place in all of their establishments so as to permit employees to readily read it. The content of the notice is prescribed by the Wage and Hour Division of the Department of Labor. An approved copy of the minimum wage poster is made available for informational purposes or for employers to use as posters.

It is available two sizes, in both color and black and white.  The large version prints two landscape-mode pages which you can tape together.  The small version prints a single portrait-mode page. A printer with at least 1 MB of memory is recommended.

## **Minimum Wage Poster** (PDF)

### **Large Color** (16K)    **Large B&W** (16K)

### **Small Color** (13K)    **Small B&W** (13K)

To use this file as a poster for your place of employment, please follow these instructions:

1. The file is only available in PDF format. In order to view and/or print PDF documents you must have a PDF viewer (e.g., Adobe Acrobat® Reader) available on your workstation.
2. Click on the link for the minimum wage poster (large color, small color, large black and white, or small black and white) and wait for it to load into the viewer.
3. To print, click on the printer icon within Adobe Acrobat® Reader. Do **not** use the browser's print feature.
4. If you chose the large version, the two printed pages must be taped or pasted together to form an 11 x 17 inch poster. Otherwise the poster fits on a single 8 1/2 x 11 inch page.

Compliance Assistance

Fair Labor Standards / Minimum Wage

Wage Garnishment

Family & Medical Leave

Farm Labor

Immigration

Lie Detector Tests

Government Contracts

Special Initiatives

YouthRules!

Garment Workers

Health Care

Workers with Disabilities

Information for...

New Businesses

State Labor Laws

State Labor Law Topics

State Labor Offices

News Room

News Releases

About Wage-Hour

What Does Wage-Hour Do?

Who's Who Directory

Find the Office

---

**Back to Top**      **www.dol.gov/esa/whd**      **www.dol.gov**

**Frequently Asked Questions** | **Freedom of Information Act** | **Customer Survey**
**Privacy & Security Statement** | **Disclaimers** | **E-mail to a Friend**

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW

1-866-4-USWAGE, TTY: 1-866-487-9243
**Contact Us**

INTERNET ARCHIVE
WayBackMachine

http://www.dol.gov/esa/regs/compliance/posters/flsa.htm   Go

JUL | A
◀ 1
2001 | 2

**237 captures**
11 Aug 02 - 17 Apr 16


http://www.dol.gov/esa/whd/flsa/   [Go]

INTERNET ARCHIVE
**WayBackMachine**
604 captures
26 Jul 02 - 16 Apr 16

JUL A

2001  20



# U.S. Department of Labor

**Employment Standards
Administration Wage and Hour
Division**

## *www.dol.gov/esa/whd*



Search / A-Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

August 4, 2002    DOL > ESA > WHD > Fair Labor Standards / Mininum Wage

# Fair Labor Standards / Minimum Wage

- The Law
  The Fair Labor Standards Act (FLSA)
- The Regulations
  29 CFR Part 5

**Quick Links**

Links to other Departmental compliance resources:

- Compliance Assistance
- Summary of Major DOL Laws
- Compliance Tools
- Small Business Handbook

## Synopsis of Law

The Fair Labor Standards Act (FLSA) establishes minimum wage, overtime pay, recordkeeping, and child labor standards affecting full-time and part-time workers in the private sector and in Federal, State, and local governments. Covered nonexempt workers are entitled to a minimum wage of not less than $4.75 an hour, effective October 1, 1996, and not less than $5.15 an hour, effective September 1, 1997. Overtime pay at a rate of not less than one and one-half times their regular rates of pay is required after 40 hours of work in a workweek.

## Compliance Assistance Materials

Minimum Wage    FAQ    Workplace Posters    eLaws Advisor    Guides    Fact Sheets

**Minimum Wage** ▲ Back to Top

## Federal Minimum Wage Last Raised by U. S. Congress to $5.15 on Sept. 1, 1997

- The Minimum Wage Page
- General Information on the FLSA
- Questions and Answers About the Minimum Wage
- Minimum Wage Increases' Impact on Special Minimum Wage Rates
- History of Changes to the Minimum Wage Law
- Chart of Minimum Wage Increases
- American Samoa Wage Rates
- Minimum Wage Laws In the States

**FAQ** ▲ Back to Top

- Frequently Asked Questions (FAQs) on FLSA

**Workplace Posters** ▲ Back to Top

- Fair Labor Standards Act (FLSA) Minimum Wage Poster
- Notice to Workers with Disabilities/Special Minimum Wage Poster

**eLaws Advisor** ▲ Back to Top

---

**Compliance
Assistance**

Fair Labor
Standards /
Minimum Wage

Wage
Garnishment

Family &
Medical Leave

Farm Labor

Immigration

Lie Detector
Tests

Government
Contracts

Special Initiatives

YouthRules!

Garment
Workers

Health Care

Workers with
Disabilities

Information for...

New
Businesses

State Labor Laws

State Labor
Law Topics

State Labor
Offices

News Room

News Releases

About Wage-Hour

What Does
Wage-Hour
Do?

Who's Who
Directory

Find the Office

INTERNET ARCHIVE
WayBackMachine

http://www.dol.gov/esa/whd/flsa/          Go

604 captures
26 Jul 02 - 16 Apr 16

JUL AU

2001 20

rules from workers, parents, teachers, and employers.

## Guides  🔺 Back to Top

- Child Labor Requirements in Nonagricultural Occupations Under the Fair Labor Standards Act (Child Labor Bulletin 101)
  Provides employers and employees with information they need to understand the Federal child labor provisions for occupations other than agriculture.
- The Handy Reference Guide
- Important Change in the Child Labor Laws Affecting Hazardous Occupations Order No. 12 and the Loading of Scrap Paper Balers and Paper Box Compactors

## Fact Sheets  🔺 Back to Top

- Fact Sheet #1
  The Construction Industry under the Fair Labor Standards Act (FLSA)
- Fact Sheet #2
  Restaurants and Fast Food Establishments under the Fair Labor Standards Act (FLSA)
- Fact Sheet #3
  Professional Offices under the Fair Labor Standards Act (FLSA)
- Fact Sheet #4
  Security Guard/Maintenance Service Industry under the Fair Labor Standards Act (FLSA)
- Fact Sheet #5
  Real Estate and Rental Agencies under the Fair Labor Standards Act (FLSA)
- Fact Sheet #6
  The Retail Industry under the Fair Labor Standards Act (FLSA)
- Fact Sheet #7
  State and Local Governments under the Fair Labor Standards Act (FLSA)
- Fact Sheet #8
  Police and Fire Fighters under the Fair Labor Standards Act (FLSA)
- Fact Sheet #9
  Manufacturing Establishments under the Fair Labor Standards Act FLSA)
- Fact Sheet #10
  Wholesale and Warehouse Industries under the Fair Labor Standards Act (FLSA)
- Fact Sheet #11
  Automobile Dealers under the Fair Labor Standards Act (FLSA)
- Fact Sheet #12
  Agricultural Employers under the Fair Labor Standards Act (FLSA)
- Fact Sheet #13
  Employment Relationship under the Fair Labor Standards Act (FLSA)
- Fact Sheet #14
  Coverage under the Fair Labor Standards Act (FLSA)
- Fact Sheet #15
  Tipped Employees under the Fair Labor Standards Act (FLSA)
- Fact Sheet #16
  Deductions From Wages For Uniforms And Other Facilities under the Fair Labor Standards Act (FLSA)
- Fact Sheet #17
  Exemption for Executives, Administrative, Professional, & Outside Sales Employees under the Fair Labor Standards Act (FLSA)
- Fact Sheet #18
  Section 13 (a) (3) Exemption For Seasonal And Recreational Establishments under the Fair Labor Standards Act (FLSA)
- Fact Sheet #19
  The Motor Carrier Exemption under the Fair Labor Standards Act (FLSA)
- Fact Sheet #20
  Employees Paid Commissions by Retail Establishments Who are Exempt Under Section 7(i) from Overtime under the Fair Labor Standards Act (FLSA)

6/29/2016      DOL WHD: Fair Labor Standards / Minimum Wage

Case 5:15-cv-00200-PRL   Document 84   Filed 06/30/16   Page 19 of 22 PageID 2285

JUL A

INTERNET ARCHIVE
WayBackMachine

http://www.dol.gov/esa/whd/flsa/    Go

604 captures
26 Jul 02 - 16 Apr 16

2001 20

- Fact Sheet #23
  Overtime Pay Requirements of the Fair Labor Standards Act (FLSA)
- Fact Sheet #24
  Homeworkers under the Fair Labor Standards Act (FLSA)
- Fact Sheet #25
  The Home Health Care Industry under the Fair Labor Standards Act (FLSA)
- Fact Sheet #27
  New Businesses under the Fair Labor Standards Act (FLSA)
- Fact Sheet #29:
  1996 Amendments to the Fair Labor Standards Act
- Fact Sheet #31
  Nursing Care Facilities under the Fair Labor Standards Act
- Fact Sheet #32
  Youth Minimum Wage under the Fair Labor Standards Act
- Fact Sheet #33
  Residential Care Facilities (Group Homes) under the Fair Labor Standards Act
- Fact Sheet #34
  Important Changes in the Child Labor Laws Affecting the Driving of Automobiles
  and Trucks Under Hazardous Occupations Order No. 2
- Fact Sheet #37
  Application of the Federal Child Labor Provisions to Amusement Parks and
  Recreation Establishments
- Fact Sheet #38
  Application of the Federal Child Labor Provisions of the Fair Labor Standards Act
  (FLSA) to Grocery Stores
- Fact Sheet #39A
  How to Obtain a Certificate Authorizing the Payment of Special Minimum Wages
  to Workers with Disabilities under Section 14(c) of the Fair Labor Standards Act
  (FLSA)
- Fact Sheet #39B
  Prevailing Wages and Commensurate Wages under Section 14(c) of the Fair
  Labor Standards Act (FLSA)
- Fact Sheet #39C
  Hours Worked and the Payment of Special Minimum Wages to Workers with
  Disabilities under Section 14(c) of the Fair Labor Standards Act (FLSA)
- Fact Sheet #39D
  Incorporating Personal Time, Fatigue and Delay (PF&D) Allowances When
  Determining Piece Rates to be Paid Workers with Disabilities Receiving Special
  Minimum Wages under Section 14(c) of the Fair Labor Standards Act (FLSA)
- Fact Sheet #39E
  Determining Hourly Commensurate Wages to be Paid Workers with Disabilities
  under Section 14(c) of the Fair Labor Standards Act (FLSA)
- Fact Sheet #39F
  The Payment of Special Minimum Wages to Workers with Disabilities Who Are
  Employed on Federal Service Contracts Subject to the McNamara-O'Hara Service
  Contract Act
- Fact Sheet #39G
  The National Community Rehabilitation Program Compliance Baseline Survey
- Fact Sheet #41
  Child Labor Compliance Survey Fact Sheet
- Fact Sheet #43
  Child Labor Provisions of the Fair Labor Standards Act (FLSA) for Nonagricultural
  Occupations
- Hoja de Datos Núm. 43
  Disposiciones sobre el Trabajo de Menores de la Ley de Normas Razonables de
  Trabajo (FLSA-en inglés) para Ocupaciones no Agrícolas
- Fact Sheet #44
  Visits to Employers
- Fact Sheet #45
  Hotel and Motel Establishments Under the Fair Labor Standards Act (FLSA)
- Fact Sheet #46
  Daycare Centers and Preschools Under the Fair Labor Standards Act (FLSA)

INTERNET ARCHIVE
WayBackMachine

604 captures
26 Jul 02 - 16 Apr 16

2001 20

JUL AU

Disposiciones sobre salario mínimo, mantenimiento de registros y trabajo de menores de la Ley de los Estados Unidos aplicables a los conductores de vehículos comerciales extranjeros y sus ayudantes

**Back to Top**          **www.dol.gov/esa/whd**                    **www.dol.gov**

**Frequently Asked Questions | Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**                    1-866-4-USWAGE, TTY: 1-866-487-9243
Frances Perkins Building                                        **Contact Us**
200 Constitution Avenue, NW
Washington, DC 20210



INTERNET ARCHIVE
WayBackMachine

72 captures
13 Aug 02 - 3 Mar 16

http://www.dol.gov/esa/regs/compliance/whd/whdfs15.htm    Go

JUL A

◄ 1
2001 2C



# U.S. Department of Labor

**Employment Standards Administration Wage and Hour Division**

## *www.dol.gov/esa/whd*



Search / A-Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location



August 13, 2002     DOL > ESA > WHD > Compliance Assistance > Fact Sheet #15

# Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information concerning the application of the FLSA to employees who receive tips.

## Characteristics

Tipped employees are those who customarily and regularly receive more than $30 a month in tips. Tips actually received by tipped employees may be counted as wages for purposes of the FLSA, but the employer must pay not less than $2.13 an hour in direct wages.

## Requirements

If an employer elects to use the tip credit provision the employer must:

1) Inform each tipped employee about the tip credit allowance (including amount to be credited) before the credit is utilized.

2) Be able to show that the employee receives at least the minimum wage when direct wages and the tip credit allowance are combined.

3) Allow the tipped employee to retain all tips, whether or not the employer elects to take a tip credit for tips received, except to the extent the employee participates in a valid tip pooling arrangement.

If an employee's tips combined with the employer's direct wages of at least $2.13 an hour do not equal the minimum hourly wage -- $4.75 an hour effective 10/1/96; $5.15 an hour effective 9/1/97 -- the employer must make up the difference.

Youth Minimum Wage: The 1996 Amendments to the FLSA allow employers to pay a youth minimum wage of not less that $4.25 an hour to employees who are under 20 years of age during the first 90 consecutive calendar days after initial employment by their employer. The law contains certain protections for employees that prohibit employers from displacing any employee in order to hire someone at the youth minimum wage.

Dual Jobs: When an employee is employed concurrently in both a tipped and a non-tipped occupation, the tip credit is available only for the hours spent in the tipped occupation. The Act permits an employer to take the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips, provided such duties are incidental to the regular duties and are generally assigned to such occupations. Where tipped employees are routinely assigned to maintenance, or where tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

Retention of Tips: The law forbids any arrangement between the employer and the tipped employee whereby any part of the tip received becomes the property of the employer. A tip is the sole property of the tipped employee. Where an employer does not strictly observe the tip credit provisions of the Act, no tip credit may be claimed and the

**Compliance Assistance**

Fair Labor Standards / Minimum Wage

Wage Garnishment

Family & Medical Leave

Farm Labor

Immigration

Lie Detector Tests

Government Contracts

**Special Initiatives**

YouthRules!

Garment Workers

Health Care

Workers with Disabilities

**Information for...**

New Businesses

**State Labor Laws**

State Labor Law Topics

State Labor Offices

**News Room**

News Releases

**About Wage-Hour**

What Does Wage-Hour Do?

Who's Who
Di
Fi



EXHIBIT

"B"

not a tip. Such charges are part of the employer's gross receipts. Where service charges are imposed and the employee receives no tips, the employer must pay the entire minimum wage and overtime required by the Act.

Tip Pooling: The requirement that an employee must retain all tips does not preclude tip splitting or pooling arrangements among employees who customarily and regularly receive tips, such as waiters, waitresses, bellhops, counter personnel (who serve customers), busboys/girls and service bartenders. Tipped employees may not be required to share their tips with employees who have not customarily and regularly participated in tip pooling arrangements, such as dishwashers, cooks, chefs, and janitors. Only those tips that are in excess of tips used for the tip credit may be taken for a pool. Tipped employees cannot be required to contribute a greater percentage of their tips than is customary and reasonable.

Credit Cards: Where tips are charged on a credit card and the employer must pay the credit card company a percentage on each sale, then the employer may pay the employee the tip, less that percentage. This charge on the tip may not reduce the employee's wage below the required minimum wage. The amount due the employee must be paid no later than the regular pay day and may not be held while the employer is awaiting reimbursement from the credit card company.

## Typical Problems

Minimum Wage Problems: Employee does not qualify as a "tipped employee", tips are not sufficient to make up difference between employer's direct wage obligation and the minimum wage; employee receives tips only -- so the full minimum wage is owed; illegal deductions for walk-outs, breakages and cash register shortages; and invalid tip pools.

Overtime Problems: Failure to pay overtime on the full minimum wage; failure to pay overtime on the regular rate including all service charges, commissions, bonuses and other remuneration.

## Where to Obtain Additional Information

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations. Copies of Wage and Hour publications may be obtained by contacting the nearest office of the Wage and Hour Division listed in most telephone directories under U. S. Government, Department of Labor.

 __Back to Top__      __www.dol.gov/esa/whd__      __www.dol.gov__

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

1-866-4-USWAGE, TTY: 1-866-487-9243
__Contact Us__